# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TYSHAWN PITTMAN,

Plaintiff,

v.                                                    5:20-CV-319
                                                      (GLS/ATB)

DETECTIVE DANIEL EDWARDS, et al.,

Defendants.

TYSHAWN PITTMAN, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review an amended complaint filed by plaintiff in accordance with this court's order, dated April 1, 2020, together with a renewed motion for appointment of counsel. (Dkt. Nos. 10, 12)  In my April 1, 2020 order, I reviewed plaintiff's original complaint and found that, as it was written, it did not state any claims against either of the defendants.  Rather than recommend dismissal at that time, I afforded plaintiff the opportunity to amend his complaint to cure the deficiencies. (Dkt. No. 6)  Plaintiff has done so and has attached additional exhibits to the proposed amended complaint. (Dkt. No. 10).

## I.    IFP Application

In my initial order, I reviewed plaintiff's IFP application, stating that he is unable to pay the filing fee. (Dkt. No. 6 at 1)  After reviewing his application, I found that plaintiff is financially eligible for IFP status. (*Id*.)

However, I also noted that, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the

allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case ***at any time*** if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) -(iii) (emphasis added).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*.,

2

550 U.S. at 555).

## II.     **Factual Background and Proposed Amended Complaint**

I will review the facts as alleged by plaintiff in his proposed amended complaint. He has changed very little from the original, but has added some clarification and some new information regarding his state court proceedings.

The proposed amended complaint contains a great deal of "background" information,[1] allegedly relevant to the issues involved in the incident that forms the basis of this federal action. Plaintiff states that in March of 2015, he made a "poor decision" and committed an act of domestic violence by striking his girlfriend in front of her daughter. (Proposed Amended Complaint ("PAC") at 6-7).[2] Plaintiff claims that he was in his own home, but defendant Daniel Edwards arrested plaintiff for First Degree Burglary, rather than arresting him for "domestic violence" and "endangering the welfare of a child." (*Id.*) Plaintiff claims that defendant Edwards "broke" the back door to make it seem as if plaintiff broke into the home. (PAC at 7).

Plaintiff claims that he was "framed" by defendant Edwards and other officers.[3] Plaintiff claims that, in order to support the burglary charge, the Assistant District Attorney - not the defendant in this action - claimed that plaintiff lived at his mother's address in order to establish that plaintiff broke into the home where the domestic

---

[1] The original complaint also contained this "background" information.

[2] I will cite to the page numbers of the PAC as assigned by the court's electronic filing system (CM/ECF).

[3] This information is background material, and plaintiff is not suing on the basis of this alleged conduct.

violence occurred. (*Id.*)  Plaintiff states that he waited three years to go to trial on the burglary charge, and although he was acquitted of burglary,[4] he claims that "the truth about the crime was withheld from the public" because the prosecutor and the court did not allow the press to publicize the trial and its "aftermath." (PAC at 7-8).

Plaintiff claims that the conduct forming the basis of this federal action occurred on February 6, 2019. (PAC at 8).  Plaintiff states that he had broken up with his girlfriend Tracey Hingher, and he was walking along Huntington Street in Syracuse, New York, when he was "spontaneously stopped" by Officer K. Lawrence.[5] (*Id.*)  Officer Lawrence told plaintiff that Tracey had called the police about a "harassment situation."  Plaintiff states that Officer Lawrence arrested him and took him to the Cortland Police Station because Tracey wanted to "follow through" with the harassment charge, even though plaintiff states that it was "based on a lie."[6] (PAC at 8-9).

Plaintiff states that when he arrived at the "precinct," he "came into contact" with defendant Edwards, who plaintiff refers to as a "former perpetrator from the past." (PAC at 9).  Plaintiff states that he was "then" charged with two new crimes - Burglary, Second Degree and Criminal Mischief, Fourth Degree.  Plaintiff states that the arresting officer and her original disposition "disappeared" because plaintiff did not "receive[]" anything "concerning" the arresting officer. (*Id.*)  Plaintiff states that he is "persuaded"

---

[4] Plaintiff does not indicate whether he was convicted of any lesser charges.

[5] Officer Lawrence is not a defendant in this action.

[6] Plaintiff states that it would not have been "wise" of him to commit a crime while wearing a "parole tracking bracelet." (AC at 9).

that the reason defendant Edwards charged plaintiff with these two new crimes was because plaintiff is black and because plaintiff could not be subject to a parole violation based upon the original harassment[7] charge. (*Id.*)  Plaintiff states that the defendant's behavior is "not new" because he did this "to a greater extent in the past." (*Id.*)  Plaintiff claims that defendant Edwards falsely arrested him because he was "initially arrested by [Officer Lawrence] for harassment." (*Id.*)  Plaintiff claims that defendant Edwards knew that these "new" charges would lead to an arrest and to a parole violation, and he "commenced the criminal proceeding with malice" by "forc[ing]" incarceration by arresting him on "unlawful charges." (PAC at 9-10).  Thus, plaintiff claims that defendant Edwards intentionally charged plaintiff with more serious offenses to ensure his incarceration and potential parole violation.[8] (PAC at 10-11).

Plaintiff also states that defendant Edwards should be liable for malicious prosecution because he showed prejudice and discrimination when he "led an improper investigation," and that investigation led to false evidence. (*Id.* at 10).  Plaintiff claims that if defendant Edwards had conducted a proper investigation, he would have discovered that plaintiff had evidence in the form of "state identification," showing that he was authorized to be in the home. (*Id.*)

Plaintiff maintained that he had permission to be in the victim's residence, so

---

[7] Plaintiff states that harassment is a violation, and that he could only be subject to a parole violation if he was charged with either a misdemeanor or a felony.  Thus, he claims that defendant Edwards charged him with the additional crimes to ensure that plaintiff would be found guilty of a parole violation.

[8] Plaintiff states that defendant Edwards should not be afforded "absolute immunity."  Plaintiff may have misunderstood this court's first order.  I only discussed "absolute immunity" with respect to ADA Monty, as will be discussed below.

plaintiff should not have been charged with burglary.  However, defendant Edwards took the victim's statement over the plaintiff's statement, showing prejudice, discrimination, and racism because the victim was white.  Plaintiff alleges that he was never allowed to explain himself, and thus, his First Amendment rights were also violated by defendant Edwards. (*Id.*)  Plaintiff claims that defendant Edwards should have interrogated him.  Plaintiff states that defendant Edwards tried to frame plaintiff for burglary, and that he was never indicted or convicted on that charge. (PAC at 10-11).

Plaintiff states that he was arraigned on February 7, 2019. (PAC at 12).  Plaintiff claims that he wanted the case to be presented to a grand jury so that the truth would come out.  However, defendant Assistant District Attorney Victoria Monty never presented the case to a grand jury, even though she promised plaintiff, by letter dated February 13, 2019, that she would present the case to the grand jury on February 20, 2019. (*Id.*)  The exhibits attached to the PAC include this letter as well as other relevant correspondence from his attorney. (PAC Exs. 1, 4, 5).  Plaintiff claims that he waited in jail for eight months, but nothing ever happened. (*Id.*)  Plaintiff claims that defendant Monty violated his right to due process. (*Id.*)

Plaintiff also claims that he is "persuaded" that defendant Monty had plaintiff[9] file the "wrong motion" with the court. (*Id.*)  Plaintiff claims that he wanted to file a speedy trial motion, but that defendant Monty did not wish plaintiff to proceed in that manner so that she could "clear herself."  Plaintiff alleges that defendant Monty's

---

[9] Plaintiff's exhibits confirm that he was represented by counsel on the criminal charges, and it was counsel who made the motions that the court will briefly discuss below.

actions kept him from being released sooner. (*Id.*)  Plaintiff alleges that defendant Monty should be liable because she had time to prosecute him within the statute of limitations but did not do so because she "chose" to let him suffer by sitting in jail. (PAC at 13-14).  Plaintiff argues that the above actions prevent defendant Monty from being afforded "absolute immunity." (PAC at 13-14).

Plaintiff alleges that he has suffered a great deal because of the defendants' actions, including loss of employment, shame in the media, and fear for his life. (PAC at 15-16).  Plaintiff seeks a substantial amount of monetary relief.

## III.    **Prosecutorial Immunity**

### A.    **Legal Standards**

Prosecutors are afforded absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).  It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

7

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). Absolute immunity has not been extended to situations in which the prosecutor gives legal advice to the police. *Burns v. Reed*, 500 U.S. 478, 492-93 (1991) (citations omitted). *See Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (denying absolute immunity when precise actions of the prosecutor were unknown). In these situations, the prosecutor would be entitled only to qualified immunity.

## B.    Application

Plaintiff's PAC has not cured any deficiencies regarding claims against defendant ADA Monty. Plaintiff claims that ADA Monty failed to present his case to the grand jury in a timely manner and allowed him to remain improperly incarcerated for approximately eight or nine months. However, each action alleged by the plaintiff was related to ADA Monty's prosecution, or lack of prosecution, of the plaintiff's criminal charges. Whether she acted with malice, intentionally failed to present, or delayed in presenting, the case to the grand jury, she would still be entitled to absolute immunity.[10] This is true, even if she violated plaintiff's New York statutory right to a speedy trial in the process.

Plaintiff claims that defendant Monty tried to "force" plaintiff to file the "wrong

---

[10] The exhibits attached to plaintiff's complaint explain the delay and the problems that ADA Monty was having with plaintiff's criminal charges, including that the "victim" of the harassment and the burglary was "less than" truthful in her statements to the police. Defendant Monty explained the situation in her motion to the County Court to transfer the case back to City Court, reduce the charges, and dispose of the action. (PAC at 24-26.) I refer to my original order for a complete explanation of the procedural background of plaintiff's criminal action. (Dkt. No. 6 at p.8 n.6).

motion" in order to have the charges dismissed. (PAC at 12). Plaintiff seems to be alleging that once the case was transferred back to City Court, defendant Monty moved to dismiss the action in the interests of justice, rather than on speedy trial grounds. Even if true, such action would still be related to the prosecution of plaintiff's criminal charges, and she would still be entitled to absolute immunity.

However, as plaintiff's exhibits show, plaintiff was represented by counsel at all relevant times, and once the case was referred to City Court on defendant Monty's motion, plaintiff's counsel moved to dismiss on New York statutory speedy trial grounds. (Pl.'s Ex. 7; PAC at 33-36). According to a decision by Cortland City Court Judge Elizabeth Burns, who dismissed plaintiff's criminal charges on speedy trial grounds, the prosecutor *did not oppose* plaintiff's motion to dismiss on the basis of speedy trial. (Pl.'s Ex. 8; *People v. Pittman*, No. CR-270-19 at 1-2 (Cortland City Ct. May 6, 2020). This court notes that, at the time plaintiff filed his original complaint in this federal action, Judge Burns had not issued her decision. There is no indication that defendant Monty "forced" plaintiff to file the "wrong" motion. Thus, plaintiff's PAC may be dismissed in its entirety as against defendant Monty based on absolute prosecutorial immunity.

## IV.    False Arrest/Malicious Prosecution

### A.    Legal Standards

#### 1.    False Arrest

"A claim for false arrest under § 1983 looks to state law as a starting point to determine the elements of [the] claim . . . ." *Tisdale v. Hartley,* No. 6:18-CV-06119

(EAW), 2020 WL 1000006, at *3 (W.D.N.Y. Mar. 2, 2020) (quoting *Potter v. Port Jervis Police Dep't*, No. 19-CV-10519, 2020 WL 528823, at *4 (S.D.N.Y. Feb. 3, 2020)). Under New York law, a plaintiff claiming false arrest "must show that: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (alteration omitted and quoting *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012)).

## 2.    Malicious Prosecution

The elements of a malicious prosecution claim are also the same for both section 1983 and New York State law. *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (citation omitted). These elements are: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor." *Id.*

It should be noted, however, that the probable cause standard for prosecution and for arrest is not the same. "An officer has probable cause to ***arrest*** when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 139, 152 (2d Cir. 2006) (quotation omitted) (emphasis added). While "probable cause to prosecute consists of 'facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty.'" *Ying Li v. City of New York*, 246 F. Supp. 3d

578, 611 (E.D.N.Y. 2017) (citation omitted).

There is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted). Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors. *Joyner v. County of Cayuga*, No. 5:20-CV-60 (MAD/TWD), 2020 WL 1904088, at *8 (N.D.N.Y. Apr. 17, 2020) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001)).

"'[I]n order for an individual to 'initiate' a prosecution . . . it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Callwood v. City of Kingston*, No. 1:15-CV-1298 (GLS/TWD), 2020 WL 2838602, at *19 (N.D.N.Y. June 1, 2020) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) and citing *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (finding a detective initiated the plaintiff's prosecution where he actively participated in the investigation and regularly collaborated with the prosecutor in an effort to ultimately bring criminal charges); *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information."

(internal quotation marks and citation omitted)); *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (finding police officers initiated criminal proceedings where they had the plaintiff arraigned, filled out complaining and corroborating affidavits, and signed felony complaint)).

In *Joyner*, the court elaborated on New York law regarding the "initiation" of criminal proceedings, which is generally the prosecutor's responsibility. 2020 WL 1904088, at *7-8. Judge D'Agostino stated that the element of "commencing or continuing" a prosecution could be satisfied by the officer generating witness statements or being in contact with the prosecutor "regularly" regarding the case. *Id.* (quoting *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015)). Judge D'Agostino also stated that

> [r]ecently, the New York Court of Appeals acknowledged that it has "'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.'" *Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted). "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

*Id.*

### B.    Application

It is clear from the PAC that defendant Edwards did not arrest the plaintiff.  By his own statements, plaintiff was arrested by Officer Lawrence for harassment, based on the alleged victim's complaint. (PAC at 8-9).  Plaintiff does not question the initial arrest, nor does he claim that Officer Lawrence lacked probable cause to arrest him for harassment.[11]  (*Id.*)  Defendant Edwards's lack of personal involvement in the arrest and plaintiff's admission that the victim wished to "follow through" with the harassment charges shields defendant Edwards from responsibility for the plaintiff's arrest. *See Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (witness interviews may provide an independent basis for probable cause).

Instead, plaintiff alleges that after plaintiff was arrested on the harassment charge, defendant Edwards knowingly and improperly increased the severity of the charges in order to ensure the plaintiff's incarceration and to increase the probability that plaintiff would also be charged with a parole violation.  Thus, he was allegedly involved in "initiating" the more serious charges than that for which he was arrested.  "[A]finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor." *D'Angelo v. Kirschner*, 288 F. App'x 724, 726-27 (2d Cir. 2008) (citing *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir.1989)). *See also Dash v. Montas*,

---

[11] "A law enforcement official has probable cause to arrest if [s]he received h[er] information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012).  Thus, reliance on the victim's statement generally defeats a false arrest claim, and an officer's failure to investigate the arrestee's claims of innocence does not defeat the existence of probable cause. *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006).

No. 17-CV-515, __ F. Supp. 3d __, 2020 WL 1550708, at *10 n.27 (E.D.N.Y. Mar. 31, 2020) (quoting and distinguishing *D'Angelo*, *supra*).  In addition, if the evidence in this case was false, as plaintiff seems to claim, then defendant Edwards could have initiated the proceedings with the knowledge that they might not succeed.  Plaintiff included the background information in order to explain that there was a "history" with this defendant, and that defendant Edwards engaged in similar conduct in the past.

In my initial order, I noted that plaintiff could not allege malicious prosecution unless the proceedings were "terminated in his favor."  At the time of the initial order, plaintiff's speedy trial motion was still pending before Judge Burns.  Since that time, Judge Burns has granted plaintiff's motion to dismiss all charges based on New York statutory speedy trial grounds.[12] (Pl.'s Ex. 8, PAC at 37-40).  Under New York law, a dismissal on speedy trial grounds constitutes a termination in favor of the plaintiff for purposes of malicious prosecution. *See Blount v. City of New York*, No. 15-CV-5599 (PKC), 2019 WL 1050994, at *4-5 (E.D.N.Y. Mar. 5, 2019) (citing *Lanning v. City of Glen Falls*, 908 F.3d 19 (2d Cir. 2018)).  Thus, plaintiff now meets the favorable termination factor in the malicious prosecution standard.

In the PAC, plaintiff makes some confusing statements,[13] but ultimately claims

---

[12] As stated above, even though the prosecutor moved for dismissal in the interests of justice, the prosecutor did not oppose plaintiff's counsel's motion for dismissal on speedy trial grounds.  A dismissal in the interests of justice would not have constituted a favorable determination for purposes of malicious prosecution. *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992) ("A dismissal in the interest of justice is neither an acquittal of the charges nor a determination of the merits," thus leaving open the question of innocence or guilt. (citation omitted)).

[13] Plaintiff also states that defendant Edwards never "took the time" to ask him about the circumstances surrounding the charges, implying simply that defendant Edwards did not undertake a thorough investigation or was negligent in his investigation.  Assuming his personal involvement in

that defendant Edwards intentionally "charged" plaintiff with the more serious crimes, disregarding plaintiff's "evidence" that he was authorized to be in the victim's home and refusing to allow plaintiff to make a statement. (PAC at 10-12).  Plaintiff also states that he was treated differently because he was black and the victim was white.  Thus, at this stage of the proceedings, the court will allow the plaintiff's malicious prosecution claim and any equal protection claim against defendant Edwards to proceed past initial review.[14]

## V.   __Miscellaneous Constitutional Claims__

In the PAC, plaintiff mentions a variety of miscellaneous constitutional amendments.  In the "form"[15] portion of his complaint, as his "First Claim," plaintiff states as follows:

> Failure to protect; false arrest; denial of due process; denial of equal protection; retaliation for the exercise of a First Amendment right; and cruel and unusual punishment.

(PAC at 5).  Plaintiff's "Second Claim" states that his First, Fourth, and Fifth Amendment rights were violated. (*Id.*)  Finally, plaintiff's "Third Claim" states generally that his Sixth, Eighth, and Eleventh Amendment rights were violated in

---

obtaining the charges, such claims would not amount to the "malice" element of malicious prosecution. However, pro se complaints are interpreted to raise the strongest claims they suggest. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  Thus, for purposes of initial review, the court will interpret the PAC as alleging intentional behavior by defendant Edwards, without making any specific findings.

[14] As stated above, I make no findings regarding the merits of any of plaintiff's claims, and even though I have recommended allowing this claim to proceed, I also make no findings regarding whether the claim could survive a properly supported dispositive motion.

[15] Plaintiff's complaint is written, in part, on a standard section 1983 form-complaint used by the court, and in part, on separate sheets of paper attached to the form. (PAC *generally*).

addition to "any other amendments un-spoken and expressed that apply toward my claim." (*Id.*)  Plaintiff also states that he is suing the defendants in their individual and official capacities.

Plaintiff may not simply mention a variety of constitutional amendments and then state that he is also raising every other amendment that applies to his claim.  Plaintiff has not stated how defendant "failed to protect" him.  As stated above, the court reads pro se complaints to allege the strongest arguments that they suggest, but plaintiff must still make claims that are not completely conclusory. *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).

## A.    Official Capacity Claims

Plaintiff alleges that he is suing both defendants in their individual and official capacities.  Since this court is recommending dismissal of the PAC with respect to defendant Monty, the court need not discuss any attempt at suing her in her "Official" capacity.[16]  A suit against defendant Edwards in his "official capacity" is tantamount to a suit against the municipality for which defendant Edwards works, the City of Cortland. *See Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the

---

[16] In addition, plaintiff's "due process" claims are alleged mostly against defendant Monty. (PAC at 12-15).  Because this court is recommending dismissal as against defendant Monty based on absolute prosecutorial immunity, the court need not discuss plaintiff's "due process" claims.

limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation.  *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Id.*  However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")).  To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citation omitted).

In this case, plaintiff has not made any allegations that would approach stating a claim against the City of Cortland. Although plaintiff alleges that defendant Edwards had prior dealings with plaintiff, there is no indication that the City ratified the officer's actions, that defendant Edwards was a policy-maker, that he was acting pursuant to a policy or custom of the City, or that the municipality failed to train its employees. Thus, any claim against defendant Edwards in his "official" capacity may be dismissed without prejudice.

### B.    Eighth Amendment

Plaintiff alleges that defendant Edwards's conduct violated plaintiff's "Eighth Amendment" rights, subjecting plaintiff to cruel and unusual punishment. (PAC at 11). Plaintiff's claim for malicious prosecution is governed by the Fourth Amendment. *Tyler v. Maggio*, No. 20-CV-1714, 2020 WL 3035215, at *3 (E.D.N.Y. June 4, 2020). To the extent that plaintiff succeeds on such a claim, the length of his confinement will be related to the damages that he obtains as the result of the violation.

The plaintiff is not claiming that his "conditions" of confinement were unconstitutional. If he were challenging the conditions of his confinement, the Eighth Amendment is not applicable to pretrial detainees. *See Darnell v. Piniero,* 849 F.3d 17, 29 (2d Cir. 2017). Such claims are governed by the Fourteenth Amendment. *Id.* Thus, plaintiff's Eighth Amendment claims may be dismissed.

### C.    First Amendment

Plaintiff also claims that his First Amendment rights were violated. In the "claims" section of the PAC, plaintiff seems to raise a claim of "retaliation" for the

exercise of a First Amendment right. (PAC at 5). However, in the body of the PAC, plaintiff states that "I was never given an opportunity to express myself through a statement. [First and Fourteenth Amendment]." (PAC at 10) (bracketed words in original). It is unclear how the lack of an "opportunity" to speak violated plaintiff's First Amendment rights, particularly in the context where he was a criminal defendant who had a right to remain silent and who was protected by certain legal safeguards with respect to interrogation by the authorities.

In order to state a claim for "retaliation," the plaintiff must "'show that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions caused the plaintiff some injury.'" *Jordan v. New York City Bd. of Elections*, No. 20-1554-CV, __ F. App'x __, 2020 WL 3168509, at *2 (2d Cir. June 15, 2020) (quoting *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019)). Plaintiff states that he was not given an opportunity to speak, not that he was punished for not making a statement.

Plaintiff seems to believe that defendant Edwards's failure to ask whether plaintiff was allowed to be in the victim's home was a violation of the First Amendment. Plaintiff states that "[defendant Edwards] never took the time out to properly investigate as a detective by interrogating me." (PAC at 11). Although plaintiff has a First Amendment right to speak, there is no indication that he was prevented from making a statement.

Plaintiff does not properly state a First Amendment claim, nor does he state a

retaliation claim on the facts he alleges.  The defendant cannot retaliate against plaintiff for a First Amendment right that he did not exercise or attempt to exercise. Thus, to the extent that plaintiff attempts to assert a First Amendment claim or a First Amendment retaliation claim, it may be dismissed.

### D.    Sixth Amendment

Plaintiff does not specify how his Sixth Amendment rights were violated.  To the extent that plaintiff is attempting to allege some sort of speedy trial violation, the court notes that plaintiff's criminal case was dismissed based on New York's statutory speedy trial rules, not upon the federal constitution.  Thus, plaintiff has not stated a Sixth Amendment claim.

### E.    Eleventh Amendment

The Eleventh Amendment protects states from suit in federal court. U.S. Const. amend XI.  The amendment does not protect individuals and is completely inapplicable to plaintiff's claims.  In fact, plaintiff does not explain anywhere in the PAC how "his" Eleventh Amendment rights may have been "violated."  Thus, any "Eleventh Amendment" claim may be dismissed.

## VI.    New York State Law Claims

Plaintiff also asserts New York State law claims of defamation and intentional infliction of emotional distress.  This court has supplemental jurisdiction over state law causes of action that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  If the court adopts this

recommendation that the malicious prosecution claims proceed against defendant Edwards, then the supplemental state law claims of defamation and intentional infliction of emotional distress may also proceed as against defendant Edwards.

## VII.  **Opportunity to Amend**

### A.    **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    **Application**

The court has already given plaintiff an opportunity to amend his complaint. Any claims against defendant Monty should be dismissed with prejudice because it is unlikely that any further attempts at suing defendant Monty would overcome her absolute immunity.  His attempt at stating any claim for First, Fifth, and Sixth Amendment violations has not been successful, and it is likely that any further attempt to amend these allegations would be futile.  Thus, although the court is recommending dismissal without prejudice of these claims, such dismissal should be without the opportunity to amend.

To the extent that plaintiff is attempting to allege Eighth Amendment violations, such dismissal should be with prejudice because the Eighth Amendment is not

applicable to pretrial detainees. To the extent that plaintiff is attempting to allege an "Eleventh" Amendment violation, such claim should be dismissed with prejudice because the Eleventh Amendment is not applicable to plaintiff as stated above.

With respect to any claims against defendant Edwards in his "official capacity," the court is recommending dismissal without prejudice. Plaintiff has had the opportunity to amend his complaint, and it is highly unlikely that plaintiff will by able to allege municipal liability with further amendment. Thus, the court is recommending that the dismissal be without prejudice, but without the opportunity for further amendment, unless plaintiff can demonstrate in his objections that he has a basis for municipal liability.

## VIII. Appointment of Counsel

### A.    Legal Standards

There is no right to counsel in a civil case. *Tyler v. Maggio*, 2020 WL 3035215, at *2 (citing *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013)). The district court cannot compel an attorney to represent a litigant in a civil case without a fee. *Id.* (citing *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301-302 (1989). The court may not "assign" counsel in a civil action, but may only "request" that an attorney volunteer to represent a litigant. *Id*.

Before granting an application for pro bono counsel, the court must consider various factors, including whether the case has "substance," the plaintiff's efforts to obtain a lawyer, and the plaintiff's ability to gather the facts and present the case if unassisted by counsel. *Id.* (citing *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010);

*Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989); *Hodge v. Police Officers*, 802 F.2d 58, 60-62 (2d Cir. 1986)).

### B.    Application

This is plaintiff's second request for appointment of counsel. In his application, he indicates that he has been unsuccessful in obtaining pro bono representation on his own. (Dkt. No. 12). I denied his first request, in part, because I gave plaintiff the opportunity to amend his complaint prior to initial review. (Dkt. No. 6 at 12). I also noted that where the court does not possess evidence, as opposed to mere allegations, relating to plaintiff's claims, the threshold requirement in the analysis of cases seeking appointment of pro bono counsel is not met. (*Id.*) (citing *Harmon v. Runyon*, No. 96-Civ.-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997)). Even though, I am recommending that this case proceed past initial review on one of plaintiff's claims, it is still too early in the proceedings for the court to assess the merits of the action and whether plaintiff can proceed unassisted. Thus, plaintiff's motion is denied without prejudice to renewal at a later date.

### CONCLUSION

Based on the above, the following claims would remain against defendant Edwards only: (1) Fourth Amendment Malicious Prosecution; (2) Fourteenth Amendment Equal Protection; (3) New York State law Defamation; and (4) New York State Law Intentional Infliction of Emotional Distress.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2), is

**GRANTED**, and it is

    **RECOMMENDED**, that the complaint be **DISMISSED** in its entirety with prejudice as against **DEFENDANT MONTY** based on absolute immunity pursuant to 28 U.S.C. § 1915(e) (2)(B)(iii), and it is

    **RECOMMENDED**, that plaintiff's **First, Fifth, and Sixth Amendment claims be DISMISSED** without prejudice, but without opportunity for amendment, and it is

    **RECOMMENDED**, that plaintiff's **Eighth and Eleventh Amendment claims be DISMISSED WITH PREJUDICE**, and it is

    **RECOMMENDED**, that plaintiff's **Fourth Amendment** claim of **MALICIOUS PROSECUTION** and his **EQUAL PROTECTION** claim proceed only against **DEFENDANT EDWARDS**, together with supplemental state law claims of **DEFAMATION and INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** and it is,

    **RECOMMENDED**, that plaintiff's federal constitutional claims be **DISMISSED** as against **DEFENDANT EDWARDS in his OFFICIAL CAPACITY**, without prejudice as described above, and it is

    **RECOMMENDED**, that if the District Court adopts this Order and Report-Recommendation, this action be returned to me for further order regarding service of process on the remaining defendant, and it is

    **ORDERED**, that plaintiff's renewed motion for appointment of counsel (Dkt. No. 12) is **DENIED WITHOUT PREJUDICE**, and it is

    **ORDERED**, that the Clerk serve a copy of this Order and Report-

Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 22, 2020

Andrew T. Baxter
U.S. Magistrate Judge

25